# GARFUNKEL WILD, P.C.

ATTORNEYS AT LAW

111 GREAT NECK ROAD • GREAT NECK, NEW YORK 11021
TEL (516) 393-2200 • FAX (516) 466-5964
www.garfunkelwild.com

SALVATORE PUCCIO
Partner
Licensed in NY
Email: spuccio@garfunkelwild.com
Direct Dial: (516) 393-2583

FILE NO.:   14747.0003

November 6, 2018

**Via ECF**

The Honorable James Orenstein
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    ***Lysyak v. Home Attendant Service of Hyde Park, Inc.***
               **Docket No.:  18-CV-259**

Dear Magistrate Judge Orenstein:

      This firm represents Defendant in the referenced matter.  Attached for the Court's review is the parties' Agreement Regarding Production of Documents and Electronically Stored Information and [Proposed] Order.  We respectfully request that the Court review and so-order the attached document.

                                Respectfully submitted,

                                */s/ Salvatore Puccio*

                                */s/ Colleen M. Tarpey*

                                Salvatore Puccio
                                Colleen M. Tarpey

cc:    All counsel of record by ECF

| NEW YORK | NEW JERSEY | CONNECTICUT |
|----------|------------|-------------|

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

YELENA LYSYAK,
Individually and on Behalf of All Others
Similarly Situated,

                              Plaintiff,

            v.

HOME ATTENDANT SERVICE OF HYDE
PARK, INC. (a/k/a HOME ATTENDANT
SERVICES OF HYDE PARK),

                           Defendant.

Case No.: 18 Civ. 259 (KAM) (JO)

## AGREEMENT REGARDING PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER

The parties hereby stipulate to the following provisions regarding the production of documents in the above-captioned case. This stipulation is subject to and without waiver of any objections that the parties may make in response to discovery. Further, nothing contained in this stipulation should be deemed an admission by any party that any category of ESI (as defined below) discussed herein exists or is relevant or discoverable.

I.     **DEFINITIONS**

      A.     **"Document"** shall be interpreted to include all documents, communications, or electronically stored information ("ESI") existing in any medium from which information can be obtained or translated into reasonably usable form.

      B.     **"Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer-generated information or data of any kind, documents stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtualized devices or media.

      C.     **"Native file(s)"** means ESI in the file type for the application in which such ESI is normally created, viewed, and/or modified.

D.    **"Metadata"** means: (i) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

E.    **"Load file"** means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A load/unitization file will also contain data relevant to the individual documents, such as agreed-upon metadata, coded data, and OCR or extracted text.

F.    **"OCR"** means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading image-based documents and making such documents searchable using appropriate software.

G.    **"Extracted text"** means the text extracted from a native file and includes all header, footer, and document body information.

## II.    PRODUCTION FORMAT

Except as detailed below, all scanned paper and ESI should be converted/processed to TIFF files, Bates numbered, and include fully searchable text. All native files for ESI will be provided in their original native format (emails in MSG format) unless redactions are required.

### A.    Global De-Duplication

Defendant shall de-duplicate ESI to avoid substantially duplicative productions. Defendant will globally de-duplicate as follows:

1.    Electronic files: Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content.

2.    Emails: Emails will be de-duplicated based upon MD5 Hash values for the email family, including parent object and attachments. The following fields will be used to create the unique value for each email: To; From; CC; BCC; MsgID; Subject; Body; and MD5 Hash values for all attachments, in attachment order. Emails will be de-duplicated at a family level, including the message and attachment(s).

3.    Documents will be de-duplicated against the entire population and all custodians of a de-duplicated document will be listed in a "Custodial De-dupe" field.

**B.     Email Threading**

In order to reduce the volume of entirely duplicative content within email threads, the Parties shall use "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most inclusive email containing the thread of emails, as well as all unique attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log.

**C.     Bates Numbering Documents**

1.   All images must be assigned a Bates number that shall always: (1) be unique across the entire document production; (2) maintain a constant length across the entire production; (3) contain no special characters or embedded spaces; and (4) be sequential within a given document.

2.   If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing Party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

**D.     Images**

1.   Images should be single-page, Group IV TIFF files, scanned at 300 x 300 dpi resolution.

2.   File names cannot contain embedded spaces.

3.   Bates numbers should be endorsed on the lower right corner of all images.

4.   The number of TIFF files per folder should not exceed 1,000 files.

5.   PowerPoint: All pages of the file should be scanned in notes view with one slide per page and the corresponding notes below the slide.

6.   All TIFF images shall display tracked changes, comments and other rich data as displayed in the document, if the track changes were visible in the last saved version of the document.

7.   All TIFF-formatted documents will be produced in black and white. The producing party will comply with reasonable requests to produce particularly identified ESI in the original, color image of specific documents (*e.g.*, where the color is relevant to the interpretation of the document). If a dispute arises as to the reasonableness of the request, the parties shall meet and confer in an effort to resolve their differences.

### E.   Text

Searchable text of the entire document must be provided for every record, at the document level.  Extracted text must be provided for all documents that originated in electronic format, and electronic text must be extracted directly from the native electronic file unless it is a redacted document, an image file, or a hard copy document.  In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.  The text file name shall be the same as the Bates number of the first page of the document.  File names shall not have any special characters or embedded spaces.

### F.   Paper Documents

1.   Paper documents, including spreadsheets maintained in paper form[1], shall be produced as TIFF images (consistent with the specifications in Section II.C.)  The production will include the appropriate load file which will, at a minimum, contain the following fields (described in detail in Section II.I.7.):

   (a)   Beginning Production Number (PRODBEGBATES)

   (b)   Ending Production Number (PRODENDBATES)

   (c)   Beginning Attachment Production Number (PRODBEGATTACH)

   (d)   Ending Attachment Production Number (PRODENDATTACH)

   (e)   Custodian

   (f)   Confidentiality

   (g)   Page Counts (PGCOUNT)

   (h)   Text Path (TEXTPATH).

2.   In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.*, paper documents should be logically unitized).

---

[1] If spreadsheets are maintained in native form, the producing party may not intentionally produce them in paper form only.

### G. Production and Use of Native Files

1. **Production of Native Files**

   (a) All ESI shall be produced in native format unless redactions are required, in which case the ESI will be produced in TIFF pursuant to Section II.

   (b) The full path of the native file, as it exists in the production, must be provided in the .DAT file for the NATIVEFILELINK field.

   (c) The number of native files per folder should not exceed 1,000 files.

   (d) For files not also imaged to TIFF format, a placeholder image that identifies the Bates number and confidentiality designation associated with the native document must be provided in lieu of a TIFF image. The file name of the native file produced shall be the Bates number of the corresponding TIFF slip sheet. Produce the following documents in native format with an image placeholder unless redactions are required:

      (i) Microsoft Excel documents (with all data unhidden) including CSV files that are not easily converted to TIFF images; and

      (ii) Multimedia files (audio, visual, etc.).

   (e) To the extent a native file produced cannot be rendered or viewed without the use of proprietary third-party software, the parties shall meet and confer to discuss options.

### H. Social Media

All Social Media should be preserved in a forensically sound manner using tools such as X1 Social Media Discovery to ensure meta-data and messages within the platform are preserved in a format that is text searchable.

### I. Image Load File

The image key shall be named the same as the Bates number of the page. The image cross-reference file is needed to link the images to the database. It is a comma-delimited file consisting of seven fields per line. There must be a line in the cross-reference file for every image in the database. The name of the image load file shall mirror the name of the delivery volume and should have an .opt extension (e.g., ABC001.opt). The volume names shall be consecutive (e.g., ABC001, ABC002, *et. seq.*).

The format is as follows:

5069542v.4

*ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

*ImageID*: The unique designation that *Concordance®* and *Concordance Image®* use to identify an image.

**Note**: *This imageID key* **must** *be a unique and fixed length number. This number will be used in the .DAT file as the ImageID field that links the database to the images. The format of this image key must be consistent across all productions. The format should be a 7 digit number to allow for the possible increase in the size of a production.*

*VolumeLabel*: Optional

*ImageFilePath*: The full path to the image file.

*DocumentBreak*: The letter "Y" denotes the first page of a document. If this field is blank, then the page is not the first page of a document.

*FolderBreak*: Leave empty

*BoxBreak*: Leave empty

*PageCount*: Optional

**J.    Metadata**

1.    The metadata load file shall use the following standard Concordance delimiters:

    (a)    Comma: ¶ (ASCII 20)

    (b)    Quote: þ (ASCII 254)

    (c)    Newline: ® (ASCII 174)

    (d)    Multi-line: ; (ASCII 59)

2.    All date fields shall be produced in "mm/dd/yyyy."

3.    A carriage-return line-feed shall be used to indicate the start of the next record.

4.    Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.) – *i.e.*, a separate volume shall be created for each piece of media delivered.

5.    The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat extension (*i.e.*, ABC001.dat).

6

6. The volume names shall be consecutive for each produced source. (*i.e.*, ABC001, ABC002, *et. seq.*

7. The first record shall contain the field names in order of the data set forth in the chart below. The text and metadata of email and the attachments, and native file document collections should be extracted and provided in a .DAT file using the field definition and formatting described below.

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| PRODBEGBATES | EDC0000001 | Beginning Bates number (production number) | All |
| PRODENDBATES | EDC0000001 | Ending Bates number (production number)<br><br>**The PRODENDBATES field should be populated for single page documents/emails. | All |
| PRODBEGATTACH | EDC0000001 | First Bates number of family range (*i.e.*, Bates number of the first page of the parent email) | All |
| PRODENDATTACH | EDC0000015 | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment) | All |
| CUSTODIAN | Smith, John | Name of person or data source from where documents/files are produced | All |
| CUSTODIAN_DEDUPE | Smith, John; Thomas, Sue | Name(s) of all custodian(s) that possessed the document; includes any custodian(s) whose duplicate file(s) was removed during processing | Email and Electronic documents ("E-docs") |
| EMAIL FROM | John Smith | Sender | Email |
| EMAIL TO | Coffman, Janice; LeeW [mailto:LeeW @MSN.com] | Recipient(s) **semi-colon should be used to separate multiple entries | Email |
| EMAIL CC | Frank Thompson [mailto: frank_Thomps | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries | Email |

7

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| | on@cdt.com] | | |
| EMAIL BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries | Email |
| EMAIL SUBJECT | Board Meeting Minutes | Subject line of the email | Email |
| EMAIL DATE_SENT | 10/12/2010 | Date the email was sent | Email |
| FILENAME | OctoberAgenda.doc | Original file name | E-docs |
| FILE_EXTEN | MSG | The file type extension | Email and E-docs |
| TITLE | Board Meeting Minutes | Title provided by user within the metadata of the document | E-docs |
| AUTHOR | John Smith | Creator of the document | E-docs |
| DATE_CREATED | 10/10/2010 | Date the document was created | E-docs |
| DATE_MOD | 10/12/2010 | Date the document was last modified | E-docs |
| TIME_MOD | 7:00 PM | Time the document was last modified **This data must be a separate field and cannot be combined with the DATE_MOD field | E-docs |
| DATE_ACCESSD | 10/12/2010 | Date the document was last accessed | E-docs |
| TIME_ACCESSD | 7:00 PM | Time the document was last accessed **This data must be a separate field and cannot be combined with the DATE_ACCESSD field | E-docs |
| PRINTED_DATE | 10/12/2010 | Date the document was last printed | E-docs |
| FILE_SIZE | 5,952 | Size of the file in KB | Email and E-docs |

8

5069542v.4

| Field Name | Sample Data | Description | Applicable Doc Type |
|---|---|---|---|
| PGCOUNT | 1 | Number of produced pages | All |
| ORIGINAL FILEPATH | J:\Shared\Smit hJ\October Agenda.doc | File source path which includes location, folder name and file extension. | Email and E-docs |
| MSGID | <000805c2c71 b$75977050$c b 8306d1@MSN > | Unique Message ID from the parent email | Email |
| MD5HASH | d131dd02c5e6 eec4693d9a06 9 8aff95c 2fcab58712467 eab4004583eb 8fb7f89 | MD5 Hash value of the document | Email and E-docs |
| CONFIDENTIALITY | Confidential | Indicates if the document has been designated as "Confidential" or "Confidential-Attorney Eyes Only" pursuant to any applicable Protective Order. A blank indicates those documents that are not so designated. | All |
| REDACTION | Redacted | Indicates if the document has been redacted prior to production. A blank indicates that the document contains no redactions. | All |
| TEXTPATH | .\ABC-002\TEXT\TE XT001\EDC-0000001.txt | Full path for OCR or extracted text files on producing media | All |
| NATIVEFILELINK | .\ABC-001\NATIVES \NATIVES001 \EDC-0000001_Conf idential.xls | Full path for documents provided in native format on producing media | Email and E-docs |

9

8.   Electronic file collection will be "De-NISTed," removing commercially available operating system and application files contained on the current NIST file list.  Identification of NIST list matches will be through MD5 Hash values.

K.   **Databases**:  To the extent a response to discovery requires production of information contained in databases, the parties will meet and confer to discuss an appropriate production protocol for information from such databases.

L.   **Embedded Objects**: Embedded files in Microsoft Office and .RTF files will be extracted as separate files and produced as attachments to the file in which they were embedded.

M.   **Compressed files**: Compression file types (*i.e.*, .CAB, .GZ, .TAR., .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

N.   **Replacement files**: Any documents that are replaced in later productions shall be clearly designated as such, by appending a "- R" to the production prefix and by a letter accompanying the production clearly designating such documents as replacements.

O.   **Time Zone**: The preferred time zone of processing ESI is UTC.  Care should be taken, however, that any alteration of time zone during processing does not interfere with or alter original metadata of that ESI.  The producing party shall consistently produce all ESI processed using the same time zone.

## III.   ELECTRONIC DISCOVERY

### A.   Collection Methods

The parties need not employ forensic data collection or tracking methods and technologies, but instead may make electronic copies for collection and processing purposes using widely-accepted best practices or methods described in manufacturers' and/or programmers' instructions, help menus, websites, and the like (e.g., .pst's, .zip's, etc.), except when and to the extent there is good cause to believe specific, material concerns about authenticity or spoliation exist with respect to specific documents or materials, in which case the producing party shall employ forensic data collection and and the parties shall meet and confer to determine the manner and method utilized to recover the specific documents or materials.

The parties shall document and disclose their collection methodologies and ascertain that the selected methodology will not overwrite or alter pre-existing metadata such as file creation date or last modified date.  If collected documents are moved at any time from one system to another (i.e. document processing to litigation database) the producing party shall document and disclose all processes and related data used to ensure that no ESI was lost in the transfer of documents.

10

Additionally, the parties will determine, record, and disclose their sources of relevant information for preservation and collection consistent with their duty to assess the scope of preservation of potentially relevant ESI, documents, and tangible things.

**B.      The Methodologies for Identifying ESI for Review**

1.    Defendant shall submit to Plaintiff a detailed plan of systems being processed, the software and technology used to collect Defendant's ESI, and the software and technology used to process Defendant's ESI, as best practices dictate and as determined by Defendant's contracted outside electronic discovery vendor.

2.    The parties agree to filter Defendant's ESI using keywords. All keyword filtering shall be performed by a reputable outside electronic discovery vendor using widely available electronic discovery software capable of running the requested keyword searches. The parties recognize that keywords must be tested and the results must be qualified with sampling. For use of keywords for filtering, Defendant will disclose and negotiate keywords with Plaintiffs. If Defendant has the opinion that a particular keyword is too broad, it may sample the results and propose more restrictive Boolean logic to limit the recall of that keyword. If Plaintiff has the opinion that a keyword is missing or too narrow, they may propose that keyword or a broader keyword.

3.    Defendant will supply a "hit report" indicating the number of hits, the number of documents upon which a keyword hit, and the number of documents in which that keyword is the only keyword present, *e.g.*, unique hits. Defendant will not be required to go more than five "rounds" of disclosure, search, and negotiation of hit report. At that point, the parties will meet and confer to agree on a reasonable sample size of the "non-hits," and Defendant will review the sample to determine the extent to which responsive documents did not "hit" on a search term. Responsive documents found in the sample shall be produced and evaluated for missing keywords, which will be considered for addition to the keyword list.

**C.      Production Protocol**

Discovery of ESI should proceed in the following sequence: after receiving requests for production that may include ESI, the responding party shall be responsible for collecting and searching its ESI in accordance with Sections III.A and B above, and shall produce all documents upon which a keyword hit.

**D.      Reservation of Rights**

Each party reserves the right to request additional information about specific ESI identified as not reasonably accessible, if the requesting party can demonstrate that relevant and responsive information that is not otherwise cumulative of information already produced can

5069542v.4

only be found through such additional efforts.  The parties shall negotiate in good faith with regard to whether such additional efforts are required and who shall bear the costs of any such additional discovery.  With respect to metadata, the parties agree that even if all metadata is not produced, it will be preserved in the event it becomes relevant at a later date.

## IV.   BEST EFFORTS FOR COMPLIANCE

The parties shall use their best efforts to comply with and resolve any differences concerning compliance with any provision/s of this Order.  If a producing party cannot comply with any aspect of this Order, such party shall inform the requesting party in writing before the time of production why compliance with this Order is unreasonable or not possible.  No party may seek relief from the Court concerning compliance with this Order until it has met and conferred with the other party.

## V.   PRIVILEGE AND REDACTIONS

Documents withheld from production that a Party believes are covered by an attorney-client privilege and/or work product protection that do not fall into the categories specifically excluded below, should be logged on a privilege log on a document-by-document basis, except the parties do not need to log any withheld documents or communications sent directly (but not copied) to outside counsel created after the date that the Complaint in this matter was filed with the Court. The producing party will provide a log identifying by Bates number each document that has been withheld and/or that contains a redaction and the reason for the withholding and/or redaction.

If any document is fully withheld on account of privilege, but other document members of the same family are not fully withheld and therefore will be produced, to avoid the loss of context due to an "orphaned" email or attachment the entire message-attachment shall still be produced with the withheld document slip-sheeted with a bates stamped TIFF image, and the bates number will be identified on the privilege log.

Privilege and redaction logs shall be produced 45 days after each production installment in PDF format, and shall be accompanied by an Excel copy of the log.  The PDF copy will be the official log of record.

To the extent that a responsive document contains (a) privileged content; (b) social security numbers; (c) names of minor children, and/or (d) entire dates of birth, the Producing Party may produce that document in a redacted form to the extent necessary to protect such information from potential public disclosure.  Any redactions shall be clearly indicated on the face of the document and each page of the document from which information is redacted shall bear a designation that it has been redacted.

## VI.   OTHER PRESERVATION OBLIGATIONS NOT AFFECTED

Nothing in this Order shall affect any other obligations of the parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, regulation, or in response to other pending or anticipated litigation.  In addition,

12

nothing in this Order shall eliminate or alter any party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

## VII.   AVAILABILITY OF ORIGINAL DOCUMENTS

The parties will retain all original source documents.  Subject to preservation of appropriate privileges and other protections, the parties will consider reasonable requests, after any necessary meet and confer, to produce the original/source copy of specific documents, or groups of documents, if additional information is required after production.  If agreed and upon demonstrated need, the responding party will make available the originals of produced electronic or hard-copy documents to the requesting party for inspection in the form in which such documents are kept in the ordinary course of business.

## VIII.   NO WAIVER OF RIGHT TO MODIFY

This Order may be revised or amended by the Court, and each party reserves the right to request the Court modify this Order.

STIPULATED TO AND RESPECTFULLY submitted this 6th day of November, 2018.

Dated: November 6, 2018

**WITTELS LAW, P.C.**

By:   */s/ Steven L. Wittels, Esq.*

      Steven L. Wittels, Esq.
      J. Burkett McInturff, Esq.
      Tiasha Palikovic, Esq.

*Counsel for Plaintiffs and the Class*


**GARFUNKEL WILD, P.C.**

By:   */s/ Salvatore Puccio, Esq.*

By:   */s/ Colleen M. Tarpey, Esq.*

      Salvatore Puccio, Esq.
      Colleen M. Tarpey, Esq.
      Gillian Barkins, Esq.

*Counsel for Defendant*

5069542v.4

**PURSUANT TO STIPULATION, IT IS SO ORDERED**

DATED: _____

_____
HON. JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE

14